IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:23-cv-190-M

| | |
|---|---|
| AMY E. RAMSEY,<br><br>    Plaintiff,<br><br>v.<br><br>GREENE COUNTY, NORTH CAROLINA, GREENE COUNTY EMERGENCY MEDICAL SERVICES DEPARTMENT, GREENE COUNTY EMERGENCY SERVICES DEPARTMENT, KEVIN BROCK KEARNEY, in his individual and official capacity, KYLE DEHAVEN, in his individual and official capacity, JEREMY ANDERSON, in his individual and official capacity, BERRY ANDERSON, in his individual and official capacity, and DAVID LANCASTER, individually and in his official capacity,<br><br>    Defendants. | ORDER |

This matter comes before the court on the motion to dismiss [DE 11] filed by Defendants Kevin Brock Kearney ("Defendant Kearney") and Kyle DeHaven ("Defendant DeHaven") (together, "Defendants") in their individual and official capacities. Defendants argue that the court should dismiss Plaintiff Amy Ramsey's ("Ramsey") claim for conspiracy to interfere with her civil rights pursuant to N.C. Gen. Stat. § 99D-1 because she fails to plausibly allege a discriminatory agreement between the two of them or any actions in furtherance of any such agreement for which they are not entitled to immunity under the statute. For the following reasons, the court agrees. The court grants the motion to dismiss Ramsey's claim under § 99D-1.

## I. Background

### A. Factual Background

Ramsey makes the following relevant factual allegations [DE 1-1]—as distinct from legal conclusions or unsupported inferences—which the court accepts as true at this stage of the proceedings. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

Ramsey began working for Greene County's Emergency Medical Services ("EMS") Department as an Advanced EMT in June 2017. DE 1-1 ¶ 16. Two years later, the County hired David Lancaster ("Lancaster") as its Fire Marshal. *Id.* ¶ 18. Lancaster was, or eventually became, "close friends" with Defendant Kearney, as they shared the same office space and "frequently spent time together outside of the office." *Id.* ¶ 20. Defendant Kearney served as the Director of the County's EMS Department and supervised both Ramsey and Lancaster. *See id.* ¶ 21.

Ramsey and Lancaster seldom interacted until August 2020, when Lancaster began making numerous unwanted sexual advances and sending sexually explicit messages over Facebook and Snapchat. *See id.* ¶¶ 22–34. Lancaster would also tell Ramsey to be "discreet" and "delete" his messages because she had "something to loose [sic]." *Id.* ¶ 35.

One of Ramsey's friends serving as a volunteer firefighter accidentally discovered Lancaster's "one-sided" messages when he picked up Ramsey's cellphone. *Id.* at 19. With her consent, he submitted a written statement to Defendant Kearney on June 9, 2022 detailing the explicit content of the messages and reporting that Ramsey "didn't want anyone to know." *Id.* at 19. She reportedly believed that if she reported Lancaster for sexual harassment, "they will fire me, and I can't afford to lose my job because I am a single mother with two children." *Id.*

After receiving this initial report, Kearney interviewed Ramsey, where he heard additional details regarding Lancaster's alleged harassment. *Id.* ¶¶ 38–39. On June 15, 2022, Ramsey filed a written statement memorializing the details she had shared with him. *Id.* ¶ 40. On June 28, 2022,

2

Kearney discussed the results of the County's investigation with Ramsey. *Id.* ¶ 42. Lancaster then resigned from his position on June 30, 2022. *Id.* ¶ 43.

### B. Procedural Background

On September 21, 2023, Ramsey filed her complaint in Greene County Superior Court. *See* DE 1-1. She sued Defendants Kearney and DeHaven as well as Lancaster, in their individual and official capacities, for interference with her federal and state constitutional rights pursuant to N.C. Gen. Stat. § 99D-1. *Id.* She also alleges claims against the same and various other defendants for negligent hiring, retention, and supervision and intentional infliction of emotion distress. *See id.*

On November 16, 2023, Defendant DeHaven, with the consent of all named defendants, removed this action pursuant to 28 U.S.C. § 1441. DE 1.[1] Four days later, Defendants Kearney and DeHaven then moved to dismiss Ramsey's civil rights conspiracy claim under Fed. R. Civ. P. 12(b)(6). DE 11. Ramsey timely responded, DE 24, and Defendants timely replied, DE 27. This matter is ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement need not be perfect but must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A 12(b)(6) motion tests the sufficiency of this statement. First, the court must accept as true all well-pleaded factual allegations contained within the pleading and must draw all reasonable inferences in the non-movant's favor. *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017).

---

[1] Defendants correctly state that this court has federal question jurisdiction under 28 U.S.C. § 1331 because Ramsey alleges as part of her civil rights conspiracy claim that Defendants violated her rights under the United States Constitution. *See Verizon Maryland, Inc. v. Glob. NAPS, Inc.*, 377 F.3d 355, 362 (4th Cir. 2004); *see also* DE 1 ¶ 5; DE 1-1 ¶ 79.

However, "bare" factual assertions and "legal conclusions" proffered by the plaintiff need not be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). Second, the non-movant's remaining allegations must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Facial plausibility requires enough fact "to raise a right to relief above the speculative level." *Id.* at 555–56 ("[The standard] simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."). A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79; *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). This determination draws on "judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Discussion

Defendants argue that Ramsey fails to plausibly state her claim for conspiracy to interfere with her civil rights under N.C. Gen. Stat. § 99D-1. *See* DE 12 at 2. Section 99D-1 provides a private right of action when:

> (1) Two or more persons, motivated by race, religion, ethnicity, or gender, but whether or not acting under color of law, conspire to interfere with the exercise or enjoyment by any other person or persons of a right secured by the Constitutions of the United States or North Carolina, or of a right secured by a law of the United States or North Carolina that enforces, interprets, or impacts on a constitutional right; and
>
> (2) One or more persons engaged in such a conspiracy use force, repeated harassment, violence, physical harm to persons or property, or direct or indirect threats of physical harm to persons or property to commit an act in furtherance of the object of the conspiracy; and
>
> (3) The commission of an act described in subdivision (2) interferes, or is an attempt to interfere, with the exercise or enjoyment of a right, described in subdivision (1), of another person.

N.C. Gen. Stat. § 99D-1(a)–(b). The statute also bars any claims against "an employer or his agent" for actions "within the scope of the employment relationship." *See id.* § 99D-1(c).

Ramsey fails to state a plausible claim to relief under N.C. Gen. Stat. § 99D-1 for two reasons. Defendants are entitled to statutory immunity, and Ramsey fails to plausibly allege a conspiracy between Defendants and Lancaster to interfere with her civil rights.

### A. Immunity

Ramsey alleges that her employers, Defendants Kearney and DeHaven, together with Lancaster, participated in an alleged civil rights conspiracy against her by knowing about Lancaster's history of sexual harassment but failing to remove him during the investigation and allowing him to resign after the investigation. *See* DE 24 at 6; DE 1-1 ¶¶ 41–49. However, the statute plainly immunizes employment decisions such as the suspension and termination of employees. *See* N.C. Gen. Stat. § 99D-1(c); *Cheatham v. Ford Motor Co.*, 64 F.3d 656 (4th Cir. 1995) (unpublished) (per curiam) (affirming dismissal of conspiracy claim based on alleged failure to promote); *Thomas v. Cumberland Cnty. Bd. of Educ.*, No. 5:10-CV-552-FL, 2012 WL 1825798, at *6 (E.D.N.C. Jan. 27, 2012), *report and recommendation adopted*, No. 5:10-CV-552-FL, 2012 WL 1825703 (E.D.N.C. May 18, 2012) (dismissing conspiracy claim based on alleged wrongful termination); *cf. DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (explaining that in the employment litigation context courts "do not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination"). Because Ramsey seeks to hold Defendants liable for their investigation and disposition of Lancaster, her claim is barred under the statutory grant of immunity.

### B. Conspiracy

Ramsey also fails to allege a plausible and nonspeculative conspiracy between Defendants and Lancaster. To state a valid claim to relief, "a plaintiff must aver the existence of a conspiracy designed to interfere with her constitutional rights." *Jaffer v. Nat'l Caucus & Ctr. on Black Aged, Inc.*, 296 F.Supp.2d 639, 644 (M.D.N.C. 2003). "A plaintiff must also sufficiently allege that the

5

persons engaged in the conspiracy used . . . repeated harassment . . . to commit an act in furtherance of the object of the conspiracy." *Bin Xu v. Univ. of N.C. at Charlotte*, 2010 WL 5067423, at *5 (W.D.N.C. Dec. 6, 2010) (unpublished) (internal quotation marks omitted). "To prove a 'conspiracy of two or more persons,' the plaintiff must show an agreement between or a 'meeting of the minds' of the defendants to violate the plaintiff's constitutional rights." *Bynum v. Hobbs Realty*, 2002 WL 31444660, at *6 (M.D.N.C. 2002) (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)).

Ramsey presents no allegations implicating Defendants as parties to an agreement with Lancaster to subject Ramsey to sexual harassment. *See generally* DE 1-1. Ramsey merely alleges that Defendants "knew or should have known" about six prior reports of workplace sexual harassment against Lancaster when they hired him in 2019. *See id.* ¶¶ 44–49. They also allegedly failed to remove Lancaster from his position as the investigation started and "permitted" him to resign at the end of the investigation. *See id.* ¶¶ 41–43. However, these allegations speak to Defendants' negligence or willful blindness regarding the risk of sexual harassment, not their knowing agreement with Lancaster to subject Ramsey to a campaign of sexual harassment. *See, e.g.*, *Simmons*, 47 F.3d at 1378 (a civil rights conspiracy "a single plan, the essential nature and general scope of which was known to each person" (citation omitted)); *Strickland v. United States*, 32 F.4th 311, 361 (4th Cir. 2022) (rejecting "defendants' alleged deliberate indifference to her claims of sexual harassment" as a basis for conspiratorial liability).

Ramsey argues that Kearney and Lancaster's alleged friendship and frequent contact inside and outside the office suggest the existence of their conspiratorial agreement. *See* DE 24 at 5; DE 1-1 ¶ 20. A version of this theory for conspiracy appeared in *Bin Xu*. 2010 WL 5067423, at *6. There, a student-plaintiff attempted to demonstrate a civil rights conspiracy when a group of

6

faculty members for his master's program collectively agreed to assign him a failing grade of "Unsatisfactory," resulting in his dismissal from the program. *Id.* The only allegation supporting the existence of a conspiracy was that the "faculty members typically assigned similarly situated students an 'Incomplete' or 'In Progress' grade as opposed to 'Unsatisfactory.'" *Id.* In other words, the alleged conspirators usually shared the same views when evaluating students, so they did so regarding the student-plaintiff as well. *See id.* The court held that this evidence alone would make proving the requisite conspiracy "extremely difficult." *Id.*

Like the faculty members in *Bin Xu*, Kearney's and Lancaster's views may have often aligned, as they were "close friends" inside and outside the workplace. DE 1-1 ¶ 20. However, without more, their friendship and frequent contact does not plausibly demonstrate that they actually achieved, or had a reasonable propensity to achieve, "a meeting of the minds" with respect to an agreement to interfere with Ramsey's constitutional rights. *See Bynum*, 2002 WL 31444660, at *6. Ramsey's conspiracy allegations fail to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss [DE 11] is GRANTED. Pursuant to Fed. R. Civ. P. 12(b)(6), the court DISMISSES Ramsey's civil rights conspiracy claim under N.C. Gen. Stat. § 99D-1. Pursuant to Fed. R. Civ. P. 15(a)(2) and Local Civil Rule 15.1, the court DENIES leave to amend the complaint because no proposed amendment has been offered to correct the described pleading deficiencies.

SO ORDERED this 2d day of August, 2024.

_Richard E Myers II_
RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE